# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN LEE WADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 3825 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| OFFICER RIZZUTO, ) | |
| SUPERINTENDENT REYES, ) | |
| and SHERIFF TOM DART, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Steven Lee Wade initially brought suit under 42 U.S.C. § 1983 against Defendants Cook County Department of Corrections, Officer Rizzuto, Superintendent Reyes, and Sheriff Tom Dart for failure to protect his safety, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment . (Dkt. 1.) This court conducted a 28 U.S.C. §1915A review of Wade's original complaint, and found Wade's claim against Rizzuto sufficient to go forward but dismissed the claims against Reyes and Dart. (*See* dkt. 4 at 2.) Later, an attorney was recruited to represent Wade (dkt. 20) and the attorney filed an amended complaint (dkt. 26). In the amended complaint, Wade brings Reyes and Dart back into the suit, alleging that they failed to take steps to protect him, even though they were aware of an Agreed Order in *United States* v. *Cook County* (No. 10 C 2946)[1] and a policy and practice of understaffing and inadequately training correctional officers (COs) at the Cook County Jail (CCJ). (Dkt. 26.)

---

[1] On May 26, 2010, the court entered an Agreed Order indicating that the CCJ must take any actions necessary to comply with its substantive provisions addressing, among other things, the use of force by staff, safety and supervision, and security staffing. (*See* Case No. 10 C 2946, dkt. 13.)

1

Reyes and Dart have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint. For the reasons stated below, the motion (dkt. 31) is granted in part and denied in part.[2]

**BACKGROUND**

Wade alleges three incidents in which he was subjected to violence by inmates or officers while detained at the CCJ. These three incidents are the basis for his claims against all defendants.

The first incident occurred on September 6, 2012 in Division One. Wade alleges that on September 6, while he was in Division One, Officer Rizzuto let him out of his cell to clean up the dayroom. (Dkt. 26 (Amend. Compl.) ¶ 8.) While Wade was cleaning the day room, inmates from the lowside cells,[3] who are not let out at the same time as those in this highside cells[4] where Wade was located, were let out. (*Id*. ¶¶ 12–14.) Because Wade was a "worker" he was allowed to stay in the dayroom with the lowside cell inmates. (*Id*. ¶ 14.)

Wade was approached by gang members who did not want Wade to be one of the "workers." (*Id*. ¶¶ 15–17.) They tried to bully him out of his job, and when he refused to cooperate they beat him. (*Id*. ¶¶ 17, 19.) After the beating, the inmates ordered Wade to go straight to his cell. (*Id*. ¶ 21.) Wade then heard his cell door unlock, which could only have been done by a remote switch mechanism operated by Officer Rizzuto. (*Id*. ¶¶ 22–23.) Fearing for his safety, Wade did not go straight to his cell; instead he walked back to the dayroom, hoping that Officer Rizzuto would see him and protect him. (*Id*. ¶¶ 25–26.) Officer Rizzuto made eye

---

[2] The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to this claim occurred in this district.

[3] "Lowside cells" refers to cell numbers 1–9 in Division One, Tier H4. (*Id*. ¶ 12.)

[4] "Highside cells" refers to cell numbers 10–18 in Division One, Tier H4. (*Id*. ¶ 8.)

2

contact with Wade and saw Wade was holding his nose and blood was running out. (*Id*. ¶ 26.) Nevertheless, Rizzuto did nothing to prevent seven inmates from entering the day room and beating Wade a second time. (*Id*. ¶¶ 33–37.) Seeing that Officer Rizzuto was not intervening or calling for backup, Wade fought back. (*Id*. ¶ 38.) After at least five minutes of beating, officers finally intervened and handcuffed the inmates, including Wade. (*Id*. ¶¶ 38–44.) Wade alleges that these acts of violence were committed by gang members and occurred because Officer Rizzuto was inadequately trained and Division One was understaffed. (*Id*. ¶ 80.)

After visiting the CCJ's medical facility, Wade was moved to Tier E2 of Division One. (*Id*. ¶¶ 53, 57.) The following Sunday he was transferred from Division One to general population in Division Nine. (*Id*. ¶ 58.) About one week after the first incident, while in Division Nine, CCJ officers forcefully cuffed Wade behind his back (despite his attempt to explain that he had a shoulder injury) while transporting him to court. (*Id*. ¶¶ 61–69.) The officers then choked and maced Wade but did not take him to the medical unit to be treated. (*Id*. ¶¶ 66–68.) Wade alleges that these officers engaged in this conduct in retaliation for the September 6, 2012 incident. (*Id*. ¶ 69.)

Lastly, on September 29, 2012, inmates from Tier 3D attacked Wade while Tier 3D inmates were supposed to be on lockdown. (*Id*. ¶ 70.) Officers eventually intervened in this attack but none of the inmates was handcuffed or controlled after the incident. (*Id*. ¶¶ 71–72.)

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.

*Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of Shelby*, --- U.S. ---, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) (citation omitted).

## ANALYSIS

Reyes and Dart contend that Wade fails to state a plausible claim against them because the allegations against them are conclusional and the pleadings are both factually and legally deficient. Wade counters that, at this stage in the proceeding, he has sufficiently pleaded facts supporting a claim against Reyes and Dart. Wade, however, does not expressly state in what capacity he is suing Reyes or Dart. As such, the court addresses both potential types of claims: (1) individual capacity claims and (2) official capacity claims.

I. **Individual Capacity Claims under 28 U.S.C. § 1983**

    A. **The Standard**

To succeed on an individual capacity claim against a state actor under § 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional deprivation.

4

*See Pepper* v. *Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005); *Palmer* v. *Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims. *Kinslow* v. *Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *see also Ascroft* v. *Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, supervisors are held individually liable for violating the constitution only where they "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E.* v. *Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones* v. *City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988) (alteration in original)).

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer* v. *Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citation and quotation marks omitted). Therefore, those charged with the high responsibility of running prisons are required, as a matter of constitutionally imposed duty, to "protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation and quotation marks omitted). To state a § 1983 claim against a prison official for failure to protect, a prisoner must meet a two-pronged test. First, he must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm" and, second, he must allege that the official acted with "deliberate indifference" to his health or safety. *Id.* at 834. The second prong is subjective rather than objective, in that the prisoner must demonstrate that the defendant had actual knowledge of the danger the plaintiff faced, not that a reasonable person should have known of the danger. *See, e.g.*, *Brown* v. *Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Under the "deliberate indifference" prong, the detainee must

show both that the official knew the inmate "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

There is a second basis on which a government official could be held liable in his individual capacity. "A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions at the jail." *Warren ex rel. Warren* v. *Dart*, No. 09 C 3512, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) (citing *Antonelli* v. *Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996)). In *Antonelli,* the Seventh Circuit explained that the Sheriff of Cook County should not be held liable in his individual capacity for "clearly localized" claims brought by inmates where he had no knowledge of the facts underlying claims. *Antonelli*, 81 F.3d at 1429. It explained that the Sheriff and others in high-level positions are "far from most of the day-to-day decisions that may have affected inmates." *Id.* at 1428. Under the Seventh Circuit's distinction between "clearly localized, non-systemic violations" and "potentially systemic" violations, allegations of the former should be dismissed as to the Sheriff. *Id.* at 1429. The court held, however, that the Sheriff could be held liable in his individual capacity for those potentially systemic claims that did not solely involve the plaintiff. *Id.* at 1428–29. Thus, while high level officials normally cannot be held liable for localized violations, they "are expected to have personal responsibility for systemic conditions." *Jones* v. *Sheahan*, No. 99 C 3669, 2001 WL 1230551, at *6 (N.D. Ill. Oct. 15, 2001) (citing *Antonelli*, 81 F.3d at 1429). For example, in *Byron* v. *Dart*, 825 F. Supp. 2d 958, 963–64 (N.D. Ill. 2011), the court held that the plaintiff had adequately alleged that jail officials were liable under a failure to protect claim after the plaintiff had been attacked in his jail

cell where the plaintiff alleged the defendants "knew there was a widespread problem of faulty cell doors."

In another case addressing the *Antonelli* standard, the court denied a motion to dismiss claims against high level officials (including the Cook County Sheriff and the executive director of the CCJ) because, "[a]t this stage of the litigation, it is difficult to tell if the problem is non-systemic or systemic." *Jones* v. *Sheahan*, No. 01 C 6548, 2002 WL 959814, at *6 (N.D. Ill. May 9, 2002). The prisoner there alleged constitutional violations based on mail room employees' allegedly opening and reading his attorney-client communications. The defendants moved to dismiss, arguing that they could not be individually liable for these claims because they were not personally responsible for the alleged violations. The court denied the motion as "premature," explaining, "If unidentified employees are intentionally opening and reading [the plaintiff's] legal mail, then it is clearly a non-systemic problem. If proper procedures have not been set up and are not being enforced for dealing with the large volume of mail that enters and leaves Cook County Jail, then it is clearly a systemic problem." *Id*.; *see also Terry* v. *Cook Cnty. Dep't of Corr.*, No. 09 C 3093, 2010 WL 331720, at *3 (N.D. Ill. Jan 22, 2010) (denying Dart's motion to dismiss individual capacity claim against him where the claim was based on his "alleged failure to enact procedures, obtain funding and adopt safeguards to prevent the denial of adequate medical care to pretrial detainees"); *Lara* v. *Sheahan*, No. 06 C 669, 2007 WL 1030304, at *9 (N.D. Ill. Mar. 30, 2007) (denying Sheriff's motion to dismiss certain claims brought against him in his individual capacity where it was "difficult to tell" at that "stage of the litigation" if they were "non-systemic or systemic violations").

**B.** **Application of Standard to Reyes**

Reyes argues that Wade has failed to state a plausible claim against him in his individual capacity. The complaint, he argues, provides no factual basis to conclude that he was personally involved in any unconstitutional conduct and that the complaint's only factual allegation as to him is that he transferred Wade from Division One to Division Nine. (Dkt. 26 ¶ 58.) Wade responds that he has pleaded a claim against Reyes because he has sufficiently alleged Reyes had actual knowledge of the risks Wade was exposed to in Division One.

Reyes does not dispute that the harm Wade alleges he suffered was sufficiently serious under *Farmer*'s first prong.[5] It is less clear whether the parties contest whether Wade has sufficiently alleged facts to satisfy *Farmer*'s second prong. Reyes argues that the complaint fails to allege he had sufficient knowledge to bring this suit against him in his individual capacity, it appears as though he is making this argument with respect to the second basis for which a government official can be held liable in his individual capacity, and not the second prong of the *Farmer*'s test, which also contains a knowledge component. Wade counters that he has sufficiently alleged that Reyes has actual knowledge of the danger Wade faced in Division One because Reyes (1) was the superintendent of Division One, (2) knew Division One was an understaffed area susceptible to gang control, (3) knew Officer Rizzuto was inexperienced, inadequately trained, and inadequately supervised, and (4) knew about the Agreed Order, which found that violence and overcrowding was a problem at the CCJ. The only new allegations against Reyes that were not in the original complaint are (2) and (3).[6] One alleged incident in Division One is not sufficient to infer that Reyes actually knew of the risk of danger to Wade.

---

[5] Indeed, neither party cites to *Farmer* or discusses its test. Because Wade is proceeding on a failure to protect theory, however, *Farmer* is the applicable standard. *Farmer*, 511 U.S. at 832–34.

[6] Wade also pleads two additional incidents after the September 6, 2012 incident, but fails to articulate why these incidents would make his claim against Reyes plausible. Indeed, there is no allegation that Reyes knew of any danger Wade would face in Division Nine, where it appears the September 13th and 29th incidents took place.

Moreover, as this court indicated in its June 9, 2014 order, Wade's citations to generic provisions related to "security and control-related policies, procedures and practices" stated in the Agreed Order are not sufficient to impart knowledge to Reyes of the specific risk of harm to Wade. Again, the standard is that the defendant had actual knowledge of the danger the *plaintiff* faced, not that a reasonable person should have known of the danger.

There are also no facts to suggest that there was more than one incident in Division One, affecting either plaintiff or other inmates, such that the court could infer systemic violations rather than a clearly localized incident. Moreover, shortly after the incident on September 6th, which occurred in Division One, Superintendent Reyes did not stand idly by and wait to see whether more incidents would follow. Rather, Wade alleges that, after the incident, Superintendent Reyes transferred him out of Division One and into Division Nine. In addition, there are no allegations that Reyes knew of any risks Wade could face in Division Nine. Since all of Wade's allegations against Reyes relate to Reyes' alleged knowledge of Division One, and there are no allegations of repeated incidents to which Wade or other inmates were subjected to in Division One, the court finds that the September 6, 2012 incident was localized and not systemic.

Accordingly, any claim against Reyes in his individual capacity is dismissed without prejudice to repleading.

### C. Application Of Standard To Dart

The allegations against Dart are almost identical to the allegations against Reyes, and Sheriff Dart, like Reyes, argues that Wade has failed to state a plausible claim against him in his individual capacity and that the complaint provides no factual basis to conclude that he was personally involved in any unconstitutional conduct. (Dkt. 31 at 3–4.) Wade responds that he


9

has stated a claim against Dart because he has alleged that Dart had actual knowledge of the risks Wade was exposed to in Division One. For the reasons stated concerning Reyes, the allegations against Dart also fall short of alleging individual liability for failure to protect.

Accordingly, any individual capacity claim against Dart is dismissed without prejudice to repleading.

## II. *Monell* Claims Under 28 U.S.C. § 1983

Because the complaint can be construed to allege official capacity claims against Reyes and Dart, which is effectively the same as having brought suit against the County, the court will address such allegations as a *Monell* claim. *See Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Sow* v. *Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent . . . ."). To state a *Monell* claim, a plaintiff must allege that a government official, acting under the color of state law, deprived him or her of a right secured by the Constitution or federal law. *Christensen* v. *Cnty. of Boone*, 483 F.3d 454, 459 (7th Cir. 2007). A municipality, however, cannot be held liable for the acts of its agents under a theory of *respondeat superior*. *Darchak* v. *City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009); *Monell*, 436 U.S. at 691. Instead, to establish municipal liability, a plaintiff must show that an unconstitutional custom, policy, or practice caused the injury and may do so by showing one of three conditions: (1) an express, unconstitutional municipal policy; (2) a widespread practice, that although unauthorized, is so permanent and well-settled, that it constitutes a custom or usage with the force of law; or (3) that a final policy-maker caused the injury. *Darchak*, 580 F.3d at 629. Here, Wade alleges a *Monell* claim based on a widespread practice of inadequately training and understaffing at the CCJ, which allows and promotes violence against

inmates.[7]

Wade correctly argues that he is not held to a heightened standard in pleading a *Monell* claim. *See McCormick* v. *City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman* v. *Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Even after *Twombly* and *Iqbal*, "an official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley* v. *Cnty. Of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010) (citing *McCormick*, 230 F.3d at 325, and collecting cases).

Here, Wade's allegations regarding a widespread custom are sufficient to alert defendants of the alleged wrongdoing—a widespread practice that infringed on his constitutional right to have prison officials take reasonable measures to guaranty the safety of the inmates. The following facts are alleged in the complaint. In September 2012, Wade was subjected to violence by inmates or officers on three separate occasions. The first incident, on September 6, 2012, occurred in Division One while Officer Rizzuto was on duty. These acts of violence committed by gang members took place because Officer Rizzuto was inadequately trained and Division One was understaffed. Shortly after the first incident, Wade was transferred from Division One to the general population in Division Nine. While in Division Nine, on September 13, 2012, CCJ officers used violent tactics against Wade when transporting him to court. These officers engaged in this conduct in retaliation for the September 6, 2012 incident. Lastly, on September 29, 2012, inmates from Tier 3D attacked Wade while Tier 3D inmates were supposed

---

[7] The only allegations in the complaint that can be construed to state a *Monell* claim are based on a "widespread practice" of inadequately training and understaffing at the CCJ, which inevitably results in a failure to protect inmates. Since Wade does not allege that there is an express municipal policy or that a final policy-maker caused the injury, the court does not address those approaches to establishing municipal liability.

to be on lockdown. Officers eventually intervened in this attack but none of the inmates were handcuffed or controlled after the incident.

Based on these allegations, the defendants are put on notice that the policy Wade alleges caused his injuries is a policy of inadequately training and understaffing at the CCJ, making inmates vulnerable to violence inflicted by other inmates and/or officers. These allegations are sufficient at this stage of the proceedings.[8]

## CONCLUSION AND ORDER

For the foregoing reasons, Reyes and Dart's motion to dismiss (dkt. 31) is granted in part and denied in part. Claims against Reyes and Dart in their individual capacity are dismissed without prejudice. If Wade can be more specific in his allegations as to Reyes's and Dart's actual knowledge of the danger *he* specifically faced, he may amend his complaint within 30 days. The motion is denied insofar as it seeks dismissal of the *Monell* claims.

Date: March 30, 2016

*[signature: Joan N. Lefkow]*

---

[8] The cases cited to by Reyes and Dart for the proposition that Wade cannot prevail on his *Monell* claim are primarily summary judgment cases. (*See* Dkt. 31 at 7–8 (citing cases).) Put differently, Reyes and Dart are asking this court to apply summary judgment standards at the dismissal stage. The court declines to do so. If discovery reveals that there is no pattern or practice, then Reyes and Dart can move for summary judgment at the appropriate time. At this stage in the proceeding with the allegations as stated in the complaint, dismissal is premature.

Moreover, the facts as alleged make this case distinguishable from the few cases defendants cite that dismiss *Monell* claims at the motion to dismiss stage of the proceeding. *See Elder* v. *Dart*, 14 C 6495, 2015 WL 509555, at *2–3 (N.D. Ill. Feb. 4, 2015) (alleging only one instance of each type of constitutional violation); *Davis* v. *Metro. Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *11–12 (N.D. Ill. July 3, 2012) (failing to allege any facts to support a conclusion that a constitutional deprivation occurred as a result of a custom or policy); *Travis* v. *City of Chicago*, No. 10 C 3011, 2012 WL 2565826, at *4–7 (N.D. Ill. June 29, 2012) (failing to sufficiently allege facts to show that defendants were aware of the constitutional violations); *Lewis* v. *Cnty of Cook*, 10 C 1313, 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011) (failing to weave together separate incidents into a cognizable county policy).